# 14-2889-cv

To Be Argued By:
MARGARET FOGERTY RATTIGAN

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

───────────

**SAFECO INSURANCE CO. OF AMERICA,**
*Plaintiff-Appellee*

v.

**LAWRENCE BRUNOLI, INC.** *and* **LAWRENCE BRUNOLI, JR.,**
*Defendants-Appellants*

───────────

ON APPEAL FROM THE U.S. DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
Hon. Michael Shea, U.S.D.J.

───────────

**BRIEF OF THE DEFENDANTS-APPELLANTS,
LAWRENCE BRUNOLI, INC.** *and* **LAWRENCE BRUNOLI, JR.**

───────────

Margaret Fogerty Rattigan, Esq.
Murphy, Laudati, Kiel, Buttler, & Rattigan, LLC
10 Talcott Notch, Suite 210
Farmington, CT  06032
Phone:  (860) 674-8296
Fax:  (860) 674-0850
Email: mrattigan@mlkbr.com

*On the brief:*
P. Jo Anne Burgh, Esq.
P.O. Box 648
Glastonbury, CT  06033
Phone:  (860) 659-2175
Fax:  (860) 659-1289
Email:p_joanne_burgh@sbcglobal.net

## **CORPORATE DISCLOSURE STATEMENT OF**
## **LAWRENCE BRUNOLI, INC.**

Pursuant to Fed.R.App.Pro. 26.1, the defendant, Lawrence Brunoli, Inc. ["LBI"], hereby submits this Corporate Disclosure Statement to the Court and states the following:

LBI is a closely held corporation owned entirely by members of the Brunoli family. There is no parent corporation or publicly held corporation that owns 10% or more of LBI's stock.

# <u>TABLE OF CONTENTS</u>

Corporate Disclosure Statement ....................................................................i

Table of Contents ........................................................................................ ii

Table of Authorities ................................................................................... iii

I.    Preliminary Statement .....................................................................1

II.   Jurisdictional Statement...................................................................2

III.  Statement of Issues Presented for Review.......................................2

IV.   Statement of the Case .....................................................................3

V.    Summary of Argument .....................................................................5

VI.   Statement of Facts...........................................................................5

VII.  Argument .......................................................................................11

      A.    Standard of review...............................................................11

      B.    Since a genuine issue of material fact existed as to the amount
            of the collateral security to which Safeco was actually entitled,
            the district court erred in granting summary judgment and
            finding Safeco entitled to collateral security in the amount of
            $4,687,147.84 ....................................................................12

      C.    The language of the GIA is ambiguous, and the district court
            erred in construing it to mean that Safeco is entitled to collateral
            security on theoretical or non-viable bond claims as well as
            viable bond claims.............................................................16

VIII. Conclusion and Statement of Relief Sought....................................24

# TABLE OF AUTHORITIES

## Judicial Decisions

*24 Leggett St. Ltd. P'ship v. Beacon Indus., Inc.,* 239 Conn. 284,
685 A.2d 305 (1996) ...............................................................21

*Albert Mendel and Son, Inc. v. Krogh,* 4 Conn. App. 117, 492 A.2d 536 (1985)...23

*American Masons' Supply Co. v. F. W. Brown Co.*, 174 Conn. 219, 384 A.2d
378 (1978) .............................................................................14

*Amoco Oil Co. v. Liberty Auto & Elec. Co.,* 262 Conn. 142, 810 A.2d 259
(2002) ...................................................................................21

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505,
91 L.Ed.2d 202 (1986); .................................................... 11-12

*Barreira Landscaping and Masonry v. Frontier Ins. Co.*, 47 Conn. Supp. 99,
779 A.2d 244 (2000) ...............................................................14

*Bernhard Thomas Building Systems, LLC v. JPI Apartment Construction,
L.P.,* 2007 WL 1828079 (Sferrazza, J.) .....................................14

*Brady v. Town of Colchester,* 863 F.2d 205 (2d Cir.1988) ..................12

*Castonguay v. Plourde,* 46 Conn. App. 251, 699 A.2d 226 (1997), *cert. denied,*
243 Conn. 931, 701 A.2d 660 (1997) .......................................23

*Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29 (1994) ..................12

*Compagnie Financiere de CIC et de L'Union Europeene v. Merrill Lynch,
Pierce, Fenner & Smith,* 232 F.3d 153 (2000) .......................19,20

*Connecticut Guaranty Insurance Ass'n v. Fontaine,* 278 Conn. 779,
900 A.2d 18 (2006) .................................................................24

*Cronin v. Aetna Life Insurance Co.,* 46 F.3d 196 (2d Cir. 1995)...........12

*Donahue v. Windsor Locks Board of Fire Commissioners,* 834 F.2d 54 (2d Cir.1987) ...................................................................................12

*F.D.I.C. v. M.F.P. Realty Associates,* 870 F.Supp. 451 (D.Conn. 1994) ...............15

*Gold v. New York Life Insurance Co.,* 730 F.3d 137 (2d Cir. 2013) ........................2

*Grigerik v. Sharpe,* 45 Conn. App. 775, 699 A.2d 189 (1997), *rev'd on other grounds*, 247 Conn. 293, 721 A.2d 526 (1998)...............................................23

*Hatcho Corporation v. Della Pietra,* 195 Conn. 18, 485 A.2d 1285 (1985) ..........23

*Howley v. Town of Stratford,* 217 F.3d 141 (2d Cir. 2000) ............................... 11-12

*Kerzer v. Kingly Manufacturing,* 156 F.3d 396 (2d Cir.1998) ................................12

*LaFond v. General Physics Services Corp.,* 50 F.3d 165 (2d Cir. 1995) ...............11

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ...................................................................12

*New England Savings Bank v. FTN Properties Ltd. Partnership,* 32 Conn. App. 143, 628 A.2d 30 (1993) ...................................................................23

*Pateley Associates I, LLC v. Pitney Bowes, Inc.,* 704 F.Supp.2d 140 (D.Conn. 2010) ................................................................................................ 21-22

*Ramseur v. Chase Manhattan Bank,* 865 F.2d 460 (2d Cir.1989) .........................12

*Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan,* 7 F.3d 1091 (2d Cir.1993)..................................................................................................20

*Shumway v. United Parcel Service, Inc.,* 118 F.3d 60 (2d Cir.1997)......................12

*Singh v. City of New York,* 524 F.3d 361 (2d Cir. 2008) ........................................11

*South End Plaza Ass'n, Inc. v. Cote,* 52 Conn. App. 374, 727 A.2d 231 (1999)....23

*Star Contracting Corp. v. Manway Construction Co.,* 32 Conn. Supp. 64, 337 A.2d 669, 671 (1973) ...................................................................................... 6-7

*Stern v. Trustees of Columbia University,* 131 F.3d 305 (2d Cir. 1997)................12

*Sturman v. Socha,* 191 Conn. 1, 463 A.2d 527 (1983) ............................................23

*Tallmadge Bros., Inc. v. Iroquois Gas Transmission System, L.P.,*
252 Conn. 479, 746 A.2d 1277 (2000) ............................................................ 18-19

*Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63 (2d Cir. 2008) ............ 19-20

## Federal and State Statutes

28 U.S.C. § 1332 .....................................................................................................2

28 U.S.C. § 1291 .....................................................................................................2

28 U.S.C. 1294 ........................................................................................................2

40 U.S.C. §§ 270a-270e .........................................................................................14

Conn. Gen. Stat. § 49-41 ......................................................................................5,6

Conn. Gen. Stat. § 49-42 ...........................................................................6,13,14,15

## Rules of Practice

Fed.R.App.Pro. 4 .....................................................................................................2

# I.    **PRELIMINARY STATEMENT**

The defendants-appellants, Lawrence Brunoli, Inc. ["LBI"] and Lawrence Brunoli, Jr. ["Brunoli"], respectfully ask this Court to reverse the summary judgment entered by the district court on May 29, 2014, on the following grounds:

1.    The district court erred in granting the motion for summary judgment filed by the plaintiff, Safeco Insurance Co. of America ["Safeco"] and finding that Safeco was entitled to collateral security from the defendants in the amount of $4,687,147.84 where a genuine issue of material fact existed as to the amount of the collateral security to which Safeco was actually entitled. As discussed below, the plain language of the parties' General Indemnity Agreement ["GIA"] provided that Safeco was only entitled to collateral security in "[a]n amount sufficient to discharge any claim made against [the plaintiff] on any Bond". The bonds as to which a viable claim existed at the time of summary judgment totaled substantially less than $4,687,147.84. *See* Exhibit A to Complaint, dated July 31, 2012 ["Complaint"].

2.    To the extent that the district court found the language of the GIA to entitle the plaintiff to collateral security even as to bond claims which were not viable, such language was ambiguous, and so summary judgment should not have entered.

1

## II.   JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction of the underlying action pursuant to 28 U.S.C. § 1332. Safeco's citizenship is diverse from that of the defendants, and the amount in controversy as of the commencement of the action exceeded $75,000.00.

This court has jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1294(1). Safeco's motion for summary judgment was filed with respect to all its claims against both defendants. The district court (Shea, J.) granted the motion for summary judgment as to all claims. The district court (Shea, J.) entered judgment in favor of Safeco and ordered the case closed on May 29, 2014; thus, this judgment is an appealable final judgment. *Gold v. New York Life Insurance Co.,* 730 F.3d 137, 144 (2d Cir. 2013).

The defendants filed their notice of appeal on June 26, 2014; therefore, this appeal is timely. Fed. R. App. Pro. 4(a)(1)(A).

## III.   STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.   Did the district court err in granting the motion for summary judgment filed by Safeco and finding that Safeco was entitled to collateral security from the defendants in the amount of $4,687,147.84 where a genuine issue of material fact existed as to the amount of the collateral security to which Safeco was actually entitled?

2.      Did the district court err in construing the language of the GIA where such language was ambiguous?

## IV.  <u>STATEMENT OF THE CASE</u>

Safeco commenced this action against the defendants by complaint filed on July 31, 2012. The defendants filed their answer and affirmative defenses on December 5, 2012. On July 8, 2013, Safeco filed a motion for summary judgment seeking, *inter alia,* an order of specific performance requiring the defendants to provide collateral security in an amount sufficient to cover Safeco's exposure as to the five (5) bond claims identified therein. The defendants filed an objection, together with exhibits and an opposing affidavit, arguing that genuine issues of material fact existed as to, *inter alia,* Safeco's actual exposure.

On February 21, 2014, the district court (Shea, J.) issued a decision granting the motion for summary judgment and finding that Safeco was entitled to collateral security in the amount of $4,687,189.84. Decision, dated February 21, 2014 ["February Decision"], at 16-20. With respect to other relief sought by Safeco, the district court ordered Safeco to present an itemized statement of expenses and afforded the defendants an opportunity to respond to such statement. February Decision at p.13.

The defendants' response to Safeco's submission, filed on April 3, 2014, included a request for reconsideration of the amount of collateral security

previously found by the district court. On April 17, 2014, Safeco filed a response in which it reiterated its entitlement to the full amount found by the district court.

Subsequent to the parties' submission of their materials, on May 16, 2014, the district court issued its decision with respect to the other relief sought by Safeco ["May Decision"]. It also denied the defendant's request for reconsideration of the amount of the collateral security, finding that "under that agreement [the GIA] Safeco is entitled to the amount of collateral security that has been order." May Decision at 8-9. To the best of the defendants' knowledge, neither the February Decision nor the May Decision has been submitted to any reporter of judicial decisions.

Judgment entered in favor of Safeco on May 29, 2014. The defendants filed their notice of this appeal on June 26, 2014.

As discussed more fully in § VI, *infra*, only two of the original five bond claims remained unresolved as of the date of judgment. On September 11, 2014, the defendants moved for an extension of time for the filing of this brief on the grounds that those two claims are scheduled for trial in Hartford Superior Court in October and November, 2014, and that adjudication or resolution of those claims will render this appeal moot. The motion was denied on September 26, 2014.

## V.    SUMMARY OF ARGUMENT

The district court erred in granting summary judgment and finding that Safeco was entitled to collateral security in the amount of $4,687,147.84. While the defendants do not dispute that Safeco was entitled to some collateral security, a genuine issue of material fact existed as to the amount to which Safeco was entitled in view of the discrepancy between the initial total of the alleged claims and the amount of Safeco's actual exposure at the time of judgment.

The district court also erred in granting the motion for summary judgment because it misconstrued the ambiguous language of the GIA. To the extent the district court construed the language of the GIA to allow Safeco to claim collateral security for its theoretical exposure on *any* bond claims, including those that were unquestionably devoid of merit, it effectively resolved a disputed issue of fact with respect to the meaning of the GIA and the intent of the parties.

## VI.    STATEMENT OF FACTS

LBI is a construction company whose primary business is acting as a general contractor on construction projects for the State of Connecticut or municipalities. Defendants' Statement in Opposition to Motion for Summary Judgment, dated September 10, 2013 ["Rule 56(a)2 Statement"], at B.1; Affidavit of Daniel Neagle, dated April 2, 2014 ["Neagle Aff."] at ¶ 4. Conn. Gen. Stat. § 49-41 requires that, on any such project exceeding one hundred thousand dollars, LBI must post

5

payment and performance bonds. Conn. Gen. Stat. § 49-42(a) provides in relevant part that if any person has performed work or supplied materials for the project and has not been paid within a specified period, the person may serve a notice of claim on the surety that issued the bond "not later than one hundred eighty days after the last date any such materials were supplied or any such work was performed by the claimant." Subsection (a) sets forth the requirements of the notice and the procedures to be followed by the claimant, the surety, and the contractor named as principal in the bond.

LBI executed certain labor and material payment bonds with Safeco on two construction projects. Rule 56(a)2 at B.4, B.5; Neagle Aff. at ¶¶ 6, 7, 8, 12. As set forth below, several subcontractors on these projects presented subcontractor payment bond claims against both Safeco and LBI. The bond claims were all predicated on Conn. Gen. Stat. § 49-42 for payments that LBI allegedly failed to make under Conn. Gen. Stat. § 49-41. Neagle Aff. at ¶ 9. The fact that the bond claims were brought pursuant to the statutes is significant since, as discussed below, the statutory requirements directly affect the viability of the claims.

Only if LBI defaulted on its obligations to the subcontractors would Safeco potentially become liable to the claimants, as the liability of the surety depends on the liability of the general contractor for breach of the underlying construction contract. Neagle Aff. at ¶¶ 12-16, 23; *Star Contracting Corp. v. Manway*

*Construction Co.,* 32 Conn. Supp. 64, 67-68, 337 A.2d 669, 671 (1973).

Notwithstanding, in addition to the bonds, LBI and Brunoli executed the GIA in

favor of Safeco. Ex. A to Complaint. The GIA entitles Safeco to indemnity for

"[a]ll loss, costs and expenses of whatsoever kind and nature . . . incurred by

[Safeco] by reason of having executed any Bond, or incurred by it on account of

any Default under this agreement by [LBI or Brunoli]". Ex. A to Complaint. It is

undisputed that neither LBI nor Brunoli defaulted on any obligations under the

GIA. Neagle Aff. at ¶¶ 12-16, 23. The GIA further provides that, as collateral

security "to repay all loss and expense to" Safeco, the defendants assign certain

property and/or rights to Safeco, but Safeco "agrees to forbear exercising the rights

granted to it . . . unless there is a Default under this agreement." Ex. A to

Complaint. The amount to which Safeco is entitled as such collateral security is the

central issue in this appeal.

The bonds upon which each of the subcontractors asserted a claim were

labor and material payment bonds. Neagle Aff. at ¶ 12. LBI is named as the

principal, and the State of Connecticut is the obligee. The bonds state in relevant

part:

> Whereas said principal will enter a certain written contract with said
> Obligee . . . [for] the Naugatuck Valley Community College . . .
> NOW, THEREFORE, if the said Principal shall promptly pay for all
> materials furnished and labor supplied or performed in the prosecution
> of the work included in the aforesaid contract . . . then this obligation
> shall be null and void.

7

Attachment to Neagle Aff. The bonds on the two projects at issue at NVCC and Bradley Airport were in the sum of $25,000,000.00 and $21,143,000.32, respectively. Neagle Aff. at ¶ 11. Safeco was only liable for payments up to the value of the contracts LBI had with the State. Neagle Aff. at ¶ 14.

The bonds guaranteed payment for labor and materials under the contracts with the State. Monies received by LBI from the State on either contract were required to be paid to any subcontractors that supplied labor and materials. Once all contract monies had been received from the State and paid to the subcontractors, the obligations of Safeco under each bond were discharged. Neagle Aff. at ¶¶ 12-15.

All monies received by LBI had been promptly paid to its subcontractors as required by Conn. Gen. Stat. § 49-41. Therefore, Safeco had *no* exposure under their labor and material payment bonds or under Conn. Gen. Stat. § 49-42. Neagle Aff. at ¶¶ 13-14. Notwithstanding, Safeco brought the underlying action and moved for summary judgment, claiming both monetary damages and injunctive relief.

At the time Safeco filed its motion, it asserted that it had received claims in the following amounts with respect to five bonds:

| | |
|---|---|
| Glidepath LLC | $ 2,859,830.80 |
| Suntech of Connecticut, Inc. | 601,304.54 |
| Brayman Hollow Masonry, Inc. | 1,226,013.00 |

8

| | |
|---|---|
| Sonepar Distribution New England, Inc. | 89,079.16 |
| City Electrical Enterprises | 494,000.00 |

Rule 56(a)1 Statement at ¶¶ 11, 12, 14, 15, 16. Two of the alleged claims, those by Suntech and Brayman Hollow,[1] were not filed within the timeframe established by Conn. Gen. Stat. § 49-42 and, therefore, the claims are time-barred. *See* Ex. B to Defendants' Objection to Motion for Summary Judgment (pleadings from lawsuits brought by, *inter alia,* Suntech and Brayman Hollow).

As of the date of judgment, the status of the five alleged claims stood thusly:[2]

| | |
|---|---|
| Glidepath LLC | Settled on or about April 24, 2014, for $146,250.00 |
| Suntech of Connecticut, Inc. | Scheduled for trial in Hartford Superior Court on October 21, 2014 |
| Brayman Hollow Masonry, Inc. | Scheduled for trial in Hartford Superior Court on November 12, 2014 |
| Sonepar Distribution of New England, Inc. | Settled on or about July 11, 2013 for $33,000.00 |
| City Electrical Enterprises | Lawsuit dismissed on December 6, 2013 for failure to prosecute |

---

[1]As discussed in further detail below, these are the only remaining alleged claims against LBI and Safeco.

[2]It is undisputed that LBI paid all amounts in connection with the settlements and the fees of defense counsel.

9

The district court entered injunctive relief in the amount of $4,687,147.84, which is the sum of the alleged claims by Glidepath, Suntech, and Brayman Hollow.[3] Although the Glidepath claim settled before judgment, Safeco failed to so apprise the Court and adjust its proposed judgment accordingly. Adjusting for this settlement, and assuming Safeco was paying all of the settlement amounts and full value on the remaining claims, Safeco's maximum possible exposure as of the date of judgment on these alleged claims was only $1,996,317.50, which is approximately forty-two (42%) percent of the amount found by the district court. February Decision at 16. Moreover, since the alleged claims by Suntech and Brayman Hollow are time-barred, Safeco's exposure on these claims could be zero.

The defendants objected to the motion for summary judgment on the grounds that, *inter alia,* the amount of collateral security demanded by Safeco far exceeded its actual exposure under the bond claims alleged against it. Although the defendants presented evidence to show that there existed a genuine issue of material fact as to the amount of collateral security to which Safeco was entitled, the district court (Shea, J.) granted Safeco's motion for summary judgment as to liability and ordered specific performance as to the collateral security in the

---

[3]Although the Court's decision seems to indicate that the City Electrical claim for $494,000 was included in those for which Safeco was entitled to collateral security; February Decision at 16; it is clear that the judgment amount of $4,687,147.84 reflects the deletion of that claim from the calculation.

amount of $4,687,147.84, the full amount claimed by Safeco with respect to the

three alleged bond claims.[4]

## VII.  ARGUMENT

### A.    Standard of review.

> Summary judgment is appropriate "if the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with the
> affidavits show that there is no genuine issue as to any material fact
> and that the moving party is entitled to a judgment as a matter of law."
> . . . The burden of showing that no genuine factual dispute exists rests
> on the party seeking summary judgment, . . . and in assessing the
> record to determine whether there is a genuine issue as to any material
> fact, the trial court is required to resolve all ambiguities and draw all
> inferences in favor of the party against whom summary judgment is
> sought.

*LaFond v. General Physics Services Corp.,* 50 F.3d 165, 171 (2d Cir. 1995)

[internal quotation marks, citations and ellipses omitted]. "This Court reviews a

district court's grant of summary judgment *de novo*, viewing the facts in the light

most favorable to the non-moving party and resolving all factual ambiguities in its

favor." *Singh v. City of New York,* 524 F.3d 361, 366 (2d Cir. 2008).

> In deciding a motion for summary judgment, the district court is not to
> resolve issues of fact but only to determine whether there is a genuine
> triable issue as to a material fact. In making that determination, the
> court is required to resolve all ambiguities, and to credit all factual
> inferences that could rationally be drawn, in favor of the party against
> whom summary judgment is sought. *See, e.g., Anderson v. Liberty
> Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202

---

[4]The decision reflects that the claim asserted by Sonepar Distribution New
England, Inc. ($89,079.16) had already been resolved, and the Court indicated that
the amount awarded reflected this. February Decision at p.16.

(1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989); *Donahue v. Windsor Locks Board of Fire Commissioners,* 834 F.2d 54, 57 (2d Cir.1987). It is not the province of the court itself to decide what inferences should be drawn, *see, e.g., Cronin v. Aetna Life Insurance Co.,* 46 F.3d at 204; *Chambers v. TRM Copy Centers Corp.,* 43 F.3d at 38; if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper, *see, e.g., Stern v. Trustees of Columbia University,* 131 F.3d at 312; *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988). Guided by these principles, we review a district court's grant of summary judgment *de novo. See, e.g., Kerzer v. Kingly Manufacturing,* 156 F.3d 396, 400 (2d Cir.1998); *Shumway v. United Parcel Service, Inc.,* 118 F.3d 60, 63 (2d Cir.1997).

*Howley v. Town of Stratford,* 217 F.3d 141, 150-51 (2d Cir. 2000) (vacating and remanding grant of summary judgment in favor of defendant).

## B. Since a genuine issue of material fact existed as to the amount of the collateral security to which Safeco was actually entitled, the district court erred in granting summary judgment and finding Safeco entitled to collateral security in the amount of $4,687,147.84.

In its statement of facts in support of its motion for summary judgment, Safeco identified five alleged bond claims and argued that it was entitled collateral security in an amount sufficient to cover all of the amounts alleged in those five claims. Statement of Facts in Support of Safeco's Motion for Summary Judgment, dated July 8, 2013, at ¶¶ 11, 12, 14, 15, 16. The defendants objected to the motion on the grounds that, *inter alia,* the amount of collateral security demanded by Safeco far exceeded the value of the few viable bond claims. As set forth in § VI,

12

*supra*, two of the claims had settled, one had been dismissed outright, and the only remaining two claims are scheduled for trial within the next few weeks. As of the date of judgment, Safeco's maximum exposure, even if it had paid all the settlement amounts and the full value of the two untimely claims, was less than half the amount awarded by the district court.

The judgment does not reflect the settlement of the Glidepath claim on or about April 24, 2014. The original claim, identified in Safeco's Statement of Facts as a claim for $2,859,830.80, was settled for $146,250.00—approximately five (5%) of the original alleged claim amount. The district court's judgment in this case was predicated on the amount of the original claim, not the sum for which the case settled. It was the obligation of Safeco, as movant, to demonstrate that the claims as to which it sought collateral security were viable claims for which Safeco was *actually* subject to exposure. This failure to do so resulted in an award of collateral security far in excess of that to which Safeco was entitled under the GIA. Therefore, the judgment should be reversed and the matter remanded for adjudication of a corrected amount that reflects Safeco's actual exposure on the Glidepath claim, which is $0.00 since the claim was resolved.

With respect to the two remaining claims by Suntech and Brayman Hollow, both of which are scheduled for trial within the next few weeks, the untimeliness of such claims bars any recovery by the claimants. Conn. Gen. Stat. § 49-42(a), a part

13

of the statutory scheme known as the Little Miller Act,[5] is intended "to assure prompt disbursement to subcontractors of funds received by the general contractor for their work." *Bernhard Thomas Building Systems, LLC v. JPI Apartment Construction, L.P.,* 2007 WL 1828079 at *2 (Sferrazza, J.). Section 49-42 establishes a limitation period for the commencement of suit on claims by subcontractors who allege that they have not received payment from the general contractor, and compliance with that limitation period "is not to be treated as an ordinary statute of limitation, but as a jurisdictional requirement establishing a condition precedent to maintaining an action under that section." *American Masons' Supply Co. v. F. W. Brown Co.*, 174 Conn. 219, 224, 384 A.2d 378 (1978). Likewise, "[f]ederal precedents make compliance with the statutory notice requirement of § 49-42(a) a precondition to the plaintiff's recovery on the surety bond." *Barreira Landscaping and Masonry v. Frontier Ins. Co.*, 47 Conn. Supp. 99, 102, 779 A.2d 244, 247-48 (2000), citing *American Masons' Supply Co.,* 174 Conn. at 224 ("As a general rule, where a statute gives a right of action which did not exist at common law, the time fixed for bringing the action is a limitation of the liability itself, and not of the remedy alone. . . . Such is the case regarding the time in which a materialman must bring suit under the statute in question.").

---

[5]This is a reference to 40 U.S.C. §§ 270a-270e, known as the Miller Act.

Suntech instituted its lawsuit on or about July 9, 2010; however, its own records indicated that Suntech last provided labor and/or materials on the project on February 8, 2009. It last submitted a requisition on October 23, 2008, for which payment was due on or before March 6, 2009. Suntech asserted in the state court action that it last finished its work on or before May 7, 2009. At the time of Suntech's claim, the limitation period under § 49-42 required commencement of suit within one (1) year. There is, therefore, no question that Suntech's claim against Safeco is untimely.

Likewise, Brayman Hollow's claim is untimely. Brayman Hollow commenced its lawsuit on or about March 26, 2011. In the state court action, Brayman Hollow produced evidence that it last provided labor and/or materials on the project on May 21, 2009, and it last submitted a requisition on February 1, 2009. Therefore, there is no question that Brayman Hollow's bond claim against Safeco is untimely.

It is the movant's "burden to affirmatively show its entitlement to recovery." *F.D.I.C. v. M.F.P. Realty Associates,* 870 F.Supp. 451, 454 (D.Conn. 1994). As of the date judgment entered in this matter, Safeco was aware of both the Glidepath settlement and the jurisdictional failings of the Suntech and Brayman Hollow claims. As a result, Safeco possessed actual knowledge that it was not entitled to collateral security in the amount of $4,687,147.84. Notwithstanding, despite the

fact that Safeco bore the burden of establishing its entitlement to judgment in the amount it sought, Safeco never told the district court of these facts. To the contrary, on April 17, 2014, Safeco filed a reply in which it reasserted its position that "it is undisputed that Safeco has outstanding bond claims in the amount of $4,687,147.84". Reply, dated April 17, 2014, at 5 (Dkt. #49). Accordingly, the district court entered summary judgment in an amount that was more than twice the amount necessary to protect Safeco against any and all existing alleged bond claims.

The district court erred in awarding Safeco collateral security in an amount that far exceeded its actual exposure at the time of judgment. Therefore, the defendants ask that this Court reverse the judgment and remand this matter for adjudication of the correct amount of collateral security to which Safeco is entitled under the GIA.

**C.** **The language of the GIA is ambiguous, and the district court erred in construing it to mean that Safeco is entitled to collateral security on theoretical or non-viable bond claims as well as viable bond claims.**

On p.16 of the February 21, 2014, decision, the district court focused on this language from the GIA:

> The undersigned will, on request of Surety, procure the discharge of Surety from any Bond and all liability by reason thereof. If such discharge is unattainable, the Undersigned will, if requested by Surety, either deposit collateral with Surety, acceptable to Surety, sufficient to cover **all exposure under such bond or bonds**, or make

provisions acceptable to Surety for the funding of the bonded obligation(s).

GIA at p.2 [emphasis added]. The district court stated further, "It is not this Court's role to adjudicate the merits of the underlying bond claims, nor is it in a position to do so. Rather, the Court's role in this case is simply to enforce the parties' rights under the indemnity agreement. . . . I find that the plain meaning of these provisions is that Safeco is entitled to collateral security in the amounts actually **claimed** against the bonds, not one party's belief, or even this Court's belief, regarding the amount to which the bond claimants are legally entitled." February Decision at p.17 [emphasis added]. Despite the plain language of the GIA and the Court's interpretation thereof, however, the Court construed the language of the GIA to encompass any and all asserted claims, regardless of whether they reflected Safeco's actual exposure in connection therewith. In the absence of any evidence or authority presented by Safeco to demonstrate that it was the intent of the parties that the collateral security provision was intended to secure claims which were theoretical, unsubstantiated, and/or specious rather than actual meritorious ones, the district court erred in its construction of the GIA, and the summary judgment should be reversed.

The extraordinarily broad interpretation of the GIA found by the district court is not one to which any general contractor would agree for the simple reason that it would force general contractors to post collateral in the amount of any claim

alleged against them and their bond companies without regard to whether the claim had any merit whatsoever. Such an outrageous and unreasonable construction of the contract language could lead to the economic ruin of a construction company which could be forced to post collateral security at *any* time after it executes a payment bond for *any* claim filed on its bond without regard for either the amount of the bond or the existence (or lack) of any legitimate basis therefor. Essentially, under the district court's interpretation of the GIA, if subcontractors filed payment bond claims before payments were due and/or before the general contractor received payment from the owner, or they filed claims for amounts that had no basis in the parties' contracts, the general contractor could be required to post collateral for such claims. Such a requirement could very quickly put the contractor out of business, and no reasonable contractor—least of all, these defendants—would enter into an agreement obligating it to post collateral for theoretical, unsubstantiated, and/or specious claims. To the extent Safeco claims that the language of the GIA entitles it to impose such an obligation on the defendants, the language of the GIA is ambiguous, and the district court erred in construing it in the context of a motion for summary judgment.

Connecticut law is well-settled on the issue of interpretation and construction of contract language:

> A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of

the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms.

*Tallmadge Bros., Inc. v. Iroquois Gas Transmission System, L.P.,* 252 Conn. 479, 498, 746 A.2d 1277, 1288 (2000) [internal quotation marks and citations omitted; brackets and ellipses in original]. In *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008), this Court reversed a grant of summary judgment and set forth the following principles:

We review a grant of summary judgment *de novo* applying the same tests used by the district court. *See, e.g., Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 232 F.3d 153, 157 (2d Cir.2000). Imposing this procedural remedy is appropriate only when there is no genuine issue with regard to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). When deciding a summary judgment motion, a court must construe all the evidence in the light most favorable to the nonmoving party, in this case Topps, and draw all inferences and resolve all ambiguities in that party's favor. *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.,* 424 F.3d 195, 205 (2d Cir.2005).

This generally means that a motion for summary judgment may be granted in a contract dispute only when the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning. *See Compagnie Financiere,* 232 F.3d at 157-58. Ambiguity here is defined in terms of

whether a reasonably intelligent person viewing the contract objectively could interpret the language in more than one way. *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan,* 7 F.3d 1091, 1095 (2d Cir.1993). To the extent the moving party's case hinges on ambiguous contract language, summary judgment may be granted only if the ambiguities may be resolved through extrinsic evidence that is itself capable of only one interpretation, or where there is no extrinsic evidence that would support a resolution of these ambiguities in favor of the nonmoving party's case. *See Compagnie Financiere,* 232 F.3d at 158. We turn next to resolve those issues.

A fair reading of the GIA reflects that it was the intent of the parties that LBI and Brunoli would indemnify Safeco from loss resulting from the bonds. There is, however, no language that can be reasonably construed to suggest that LBI and Brunoli agreed to provide collateral security to Safeco where there existed no actual risk of loss. Certainly Safeco has presented no evidence of the parties' intent which, if credited, would support such an interpretation of the GIA. To the contrary, on p.8 of Safeco's memorandum in support of its motion for summary judgment, Safeco argued that "[c]ourts routinely hold that a surety seeking indemnification based on a written indemnity agreement is entitled to judgment as a matter of law where (1) the defendants signed the indemnity agreement, (2) **the surety incurred losses**, and (3) the defendants have refused to indemnify the surety." [emphasis added] Safeco offered no authority for the proposition that it was entitled to collateral security for claims that are jurisdictionally barred or have already settled for a fraction of their original claimed value.

It is worth noting that the opening sentence of the GIA reads thusly:

20

THIS AGREEMENT is made by the Undersigned [LBI and Brunoli] in favor of the SAFECO Insurance Companies for the purpose of indemnifying them from **all loss and expenses** in connection with any Bonds for which any SAFECO Insurance Company now is or hereafter becomes Surety for any of the following as Principal: Lawrence Brunoli, Inc. . . .

[capitalization in original; emphasis added]. In other words, the GIA reflects the parties' intent that the defendants will indemnify Safeco against loss rather than liability.

Under Connecticut law,

indemnity agreements fall broadly into two classes, those [in which] the contract is to indemnify against liability and those [in which] it is to indemnify against loss. In the first, the cause of action arises as soon as liability is incurred, but in the second it does not arise until the indemnitee has actually incurred the loss. . . . Whe[n] an indemnity agreement, however, indemnifies against liability as well as against loss . . . the indemnitee does not have to wait until the loss occurs, but may sue on the agreement as soon as liability is incurred.

*Amoco Oil Co. v. Liberty Auto & Elec. Co.,* 262 Conn. 142, 149, 810 A.2d 259 (2002) (citing *24 Leggett St. Ltd. P'ship v. Beacon Indus., Inc.,* 239 Conn. 284, 306, 685 A.2d 305 (1996) (indemnification clause, which obligated seller-defendant to indemnify, defend, and hold harmless land purchaser-plaintiff for any "liabilities, losses, damages, costs or expenses (including reasonable attorneys' fees) of any nature arising from the environmental condition of or problem with the Property, which condition or problem arose prior to Closing," covered indemnification of both loss and liability, requiring seller to indemnify purchaser for purchaser's liability for future costs not yet paid for remediation of land contaminated with "special wastes," that violated Connecticut regulations)). Under an agreement to indemnify against loss only, "it is theoretically impossible for an indemnitee to have an actionable claim against the indemnitor until the indemnitee actually has paid something it is legally obligated to pay." *Id.* at 150, 810 A.2d 259. "Conversely an action to enforce an agreement to

indemnify against liability only would accrue as soon as an indemnitee becomes liable to a third party," *i.e.,* obligated to pay a third party. *Id.*

*Pateley Associates I, LLC v. Pitney Bowes, Inc.,* 704 F.Supp.2d 140, 153-54 (D.Conn. 2010) [brackets and ellipses in original].

Not only has Safeco not sustained loss on the Suntech and Brayman Hollow bonds, but also in view of the jurisdictional failings of those lawsuits, it is entirely possible it will never sustain such a loss since there exists no basis upon which it would become obligated to pay a judgment. Moreover, as noted above, even if Safeco were to pay the settlement amount for Glidepath, that amount is a fraction of the original claim, thereby underscoring the significant discrepancy between indemnification for actual loss versus indemnification for a theoretical and/or unsubstantiated claim that may reflect nothing more than some subcontractor's wish. Nonetheless, Safeco and the district court have effectively construed the language of the GIA to provide that the defendants are to provide collateral security for sums for which Safeco may never become liable, despite the dearth of evidence that this construction reflects the intent of the parties to the GIA.

To the extent that Safeco sought summary judgment entitling it to collateral security for losses which are essentially theoretical rather than actual, it was Safeco's obligation as movant to provide the Court with a basis for concluding as a

matter of law that there existed no question that this was the parties' intent as

expressed in the contract.

> It is axiomatic that the meaning and intent of language in both a
> contract and a deed are determined, not by the actual intent of the
> parties, but by the intent expressed in the [contract], considering all its
> relevant provisions and reading it in light of the surrounding
> circumstances. *Grigerik v. Sharpe,* 45 Conn. App. 775, 786-87, 699
> A.2d 189 (1997), *rev'd on other grounds*, 247 Conn. 293, 721 A.2d
> 526 (1998); *Castonguay v. Plourde,* 46 Conn. App. 251, 258, 699
> A.2d 226 (1997), *cert. denied,* 243 Conn. 931, 701 A.2d 660 (1997).
> Furthermore, "[i]n giving meaning to the language of a contract, we
> presume that the parties did not intend to create an absurd result."
> *New England Savings Bank v. FTN Properties Ltd. Partnership,* 32
> Conn. App. 143, 145-46, 628 A.2d 30 (1993).

*South End Plaza Ass'n, Inc. v. Cote,* 52 Conn. App. 374, 377-78, 727 A.2d 231,

232 (1999) [ellipses and some brackets in original]. Moreover, in considering the

meaning of a contract, the Connecticut Appellate Court has stated:

> [T]he intention of the parties controls the construction of that contract.
> *Hatcho Corporation v. Della Pietra,* 195 Conn. 18, 20, 485 A.2d 1285
> (1985). Their intention is determined from the language used.
> *Sturman v. Socha,* 191 Conn. 1, 10, 463 A.2d 527 (1983). Any
> concealed intent which either party may have harbored plays no part
> in this determination. Id. The words as written, moreover, must be
> accorded a fair and reasonable construction and their "common,
> natural, and ordinary meaning and usage where it can be sensibly
> applied to the subject matter of the contract." *Id*.

*Albert Mendel and Son, Inc. v. Krogh,* 4 Conn. App. 117, 123, 492 A.2d 536, 541

(1985).

If it was Safeco's intention that the defendants would provide collateral

security for theoretical rather than actual loss, it was incumbent upon Safeco, as

23

drafter of the GIA, to include language in the GIA that would reflect this intention. Connecticut law has long adhered to the principle that, where an insurance contract is ambiguous, it is to be construed against the drafter. *Connecticut Guaranty Insurance Ass'n v. Fontaine,* 278 Conn. 779, 788-79, 900 A.2d 18 (2006). As set forth above, a general contractor entering into such a GIA would potentially face economic ruin if subcontractors filed specious claims and the surety nonetheless demanded collateral to cover such claims. Thus, any ambiguity should be construed against Safeco.

The language of the GIA does not support a conclusion that Safeco is entitled to collateral security for theoretical and/or unsubstantiated claims. Viewed in the light most favorable to the defendants as the non-moving parties, the language of the GIA is ambiguous. Therefore, the district court erred in construing the GIA to require the defendants to provide collateral security for such theoretical claims, and the defendants respectfully asks that this Court reverse such judgment.

## VIII.  <u>CONCLUSION AND STATEMENT OF RELIEF SOUGHT</u>

For the reasons set forth above, the defendants-appellants, Lawrence Brunoli, Inc. and Lawrence Brunoli, Jr., respectfully ask that this Court reverse the judgment in favor of the plaintiff and remand this matter for further proceedings according to law.

24

Respectfully submitted,

DEFENDANTS-APPELLANTS,
LAWRENCE BRUNOLI, INC. and LAWRENCE
BRUNOLI, JR.

By: _/s/ Margaret F. Rattigan
Margaret Fogerty Rattigan
Murphy, Laudati, Kiel, Buttler & Rattigan, LLC
10 Talcott Notch, Suite 210
Farmington, CT 06032
Fed. Bar no. ct 09616
Telephone 860 674 8296
Fax 860 674 0850
e-mail: mrattigan@mlkbr.com

## CERTIFICATION OF SERVICE

I, Margaret F. Rattigan, Attorney for the defendants, LAWRENCE BRUNOLI, INC. and LAWRENCE BRUNOLI, JR. in the above-captioned action, hereby certify that on October 7, 2014, a copy of the foregoing was electronically filed and served on the following counsel of record pursuant to the Court's Electronic Filing Order Notice of this Filing will be sent via email to the following parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Bradford R. Carver, Esq.
Jonathan C. Burwood
Hinshaw & Culbertson, LLP
28 State Street, 24th Floor
Boston, MA 02109


By:  /s/ Margaret F Rattigan
Margaret Fogerty Rattigan
Murphy, Laudati, Kiel, Buttler & Rattigan, LLC

## <u>CERTIFICATE OF COMPLIANCE WITH FED.R.APP.PRO. 32(a)</u>

This brief complies with the type-volume limitation of Fed.R.App.Pro. 32(a)(7)(B) because this brief contains 6,263 words, excluding the parts of the brief exempted by Fed.R.App.Pro. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed.R.App.Pro. 32(a)(5) and the type style requirements of Fed.R.App.Pro. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 97-2003 in Times New Roman, 14 point.


/s/ Margaret F. Rattigan_____
Margaret Fogerty Rattigan
Attorney for Lawrence Brunoli, Inc. and Lawrence Brunoli, Jr.
Dated October 7, 2014